# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

**JAMES MICHAEL PARMER**,

    Plaintiff,

v.

**JEFF PREMO, Superintendent**,

    Respondent.

Case No. 6:16-cv-1090-SB

**ORDER**

**Michael H. Simon, District Judge.**

United States Magistrate Judge Stacie Beckerman issued Findings and Recommendation in this case on April 19, 2018. ECF 39. Judge Beckerman recommended that petitioner's petition challenging his convictions under 28 U.S.C. § 2254 be denied as untimely because Petitioner has not made the showing of actual innocence necessary to qualify for an equitable exception to the one-year statute of limitations.

Under the Federal Magistrates Act ("Act"), the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). If a party files objections to a magistrate's findings and recommendations, "the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*; Fed. R. Civ. P. 72(b)(3).

For those portions of a magistrate judge's findings and recommendations to which neither party has objected, the Act does not prescribe any standard of review. *See Thomas v. Arn*, 474 U.S. 140, 152 (1985) ("There is no indication that Congress, in enacting [the Act], intended to require a district judge to review a magistrate's report to which no objections are filed."); *United States. v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (holding that the court must review de novo magistrate's findings and recommendations if objection is made, "but not otherwise"). Although in the absence of objections no review is required, the Act "does not preclude further review by the district judge[] *sua sponte* . . . under a *de novo* or any other standard." *Thomas*, 474 U.S. at 154. Indeed, the Advisory Committee Notes to Fed. R. Civ. P. 72(b) recommend that "[w]hen no timely objection is filed," the Court review the magistrate judge's recommendations for "clear error on the face of the record."

Petitioner timely filed an objection (ECF 41), to which Respondent responded. ECF 42. Petitioner objects to the portion of Judge Beckerman's recommendation finding that Petitioner had not made a "gateway" showing of actual innocence because he offered no new reliable evidence that was not presented at trial. Judge Beckerman correctly found that that Petitioner provided only a recitation of the evidence presented during a suppression hearing concerning the admissibility of his confession and certain evidence presented at trial in his original and amended petition. In his objection to the F&R, Petitioner now argues that the "new" reliable evidence of his innocence is the "developing science" that, since Petitioner's 2007 trial, has exposed the coercive techniques used by police officers to extract confessions and the pervasive problem of false confessions. Plaintiff cites several journal articles on the topic of false confessions, many of which note the prevalence of false confessions in DNA exoneration cases, but none of which speak to the likelihood that any given confession is false.

It is doubtful whether academic studies exploring the unreliability of confessions qualify as "new reliable evidence" for the purposes of *Schlup v. Delo*'s gateway innocence showing. 513 U.S. 298, 324 (1995). Under *Schlup*, petitioners must make a gateway showing of actual innocence by presenting "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* Though *Schlup*'s illustrative list of "new reliable evidence" may not be exhaustive, academic studies of the sort presented by Petitioner are qualitatively different from the categories of evidence contemplated by *Schlup*. The journal articles do not, and cannot, speak to Petitioner's actual innocence, but merely raise questions as to the reliability of confessions in the abstract. The articles that Petitioner cites, moreover, do not indicate how likely it is that any given confession is false, but merely suggest that false confessions are more prevalent than previously assumed. *See, e.g.,* Richard A. Leo, *False Confessions: Causes, Consequences, and Implications* 37 J. Am. Acad. Psychiatry & L. 332, 333 (2009) (arguing that most lay people hold the incorrect belief "that an innocent person will not falsely confess to police unless he is physically tortured or mentally ill."). Even if these studies qualify as "scientific evidence," they are not "exculpatory" because they do not relate to the specific facts of Petitioner's case or even provide information that would allow a factfinder to evaluate the reliability of Petitioner's confession.

In *Souliotes v. Hedgpeth*, for example, the "new evidence" was "exculpatory scientific evidence that the [chemicals] found on Petitioner's shoes and at the fire scene are distinguishable and provide no evidence that Petitioner was physically present at the fire scene." 2012 WL 1458087, at *17 (E.D. Cal. Apr. 26, 2012), report and recommendation adopted, 2012 WL 2684972 (E.D. Cal. July 6, 2012). In that case, the "new evidence" was a scientific analysis of physical evidence from the petitioner and the scene of the crime that directly supported the

petitioner's innocence, not general academic studies indicating the potential unreliability of certain evidence. Moreover, the state stipulated that such evidence was new "exculpatory scientific evidence" under *Schlup*. The court in *Souliotes* also considered certain scientific advancements in arson investigation, and concluded that the fire investigators' trial conclusions could no longer be considered correct, but it did so in the process of reviewing "all the evidence implicating Petitioner's guilt, not just the new evidence." *Id.* The "new evidence" was limited to the evidence of the chemicals. *Souliotes* therefore does not, as Petitioner contends, support Petitioner's argument that general academic studies constitute "new reliable evidence" under *Schlup*. The other case that Petitioner cites in support of his contention that such studies can qualify as new reliable evidence, *Young v. Conway*, 698 F.3d 69, 78-85 (2d Cir. 2012), is concerned with the admissibility of certain unreliable testimony, not *Schlup* or showings of actual innocence and is therefore inapposite to this case.

Even assuming such studies qualify as "new reliable evidence" under *Schlup*, Petitioner has nevertheless failed to meet his burden. The new evidence must be so significant that when all of the evidence is viewed together, it becomes more likely than not that no other reasonable juror would have found the petitioner guilty beyond a reasonable doubt. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). Importantly, the question is not whether the new evidence would have resulted in Petitioner's confession being suppressed for unreliability, but whether any reasonable juror would have convicted, having been presented with "new evidence" of the unreliability of confessions, in addition to all other evidence presented at trial. *House v. Bell*, 547 U.S. 518, 537 (2006).

At trial, a detective testified that Petitioner confessed in an interview to having sexually abused the victims. ECF 17-1 at 32-33. Anatomical drawings that one victim had marked to

show where Petitioner had touched him, and which generally corroborated Petitioner's confession as recounted by the detective, were also introduced in evidence. ECF 17-2 at 9-12. The state also submitted as evidence letters that Petitioner wrote to the victims, which the detective encouraged Petitioner to write following Petitioner's confession. *Id.* at 32-35. Petitioner wrote to one victim, "I have come to understand that what I did was wrong. I should never have touched you in any way," *Id.* at 32, and to the other "I did something with you that was wrong, and should never have done," *Id.* at 33. Petitioner also testified at his trial, denying that he sexually abused the victims and denying that he admitted to the detective that he abused them. ECF 17-1 at 39. Rather, Plaintiff said, he merely capitulated to the detective's accusations because he was physically intimidated by the detective. *Id.* at 39. Petitioner further testified that he wrote the letters only because he was terrified of the detective and did not want reprisals. *Id.*

The judge at Petitioner's bench trial thus already had evidence that Petitioner's confession was unreliable, but nevertheless found the evidence of Petitioner's guilt convincing. The studies regarding the reliability of confessions are at most cumulative to Petitioner's testimony that he was intimidated into confessing. Petitioner was nevertheless found guilty beyond a reasonable doubt, and there is no reason to believe that further information on the prevalence of false confessions would have altered this outcome. The anatomical drawings, detective's testimony, and letters written by Petitioner are sufficient for a reasonable juror to find that Petitioner was guilty beyond a reasonable doubt, even in light of recent studies on the prevalence of false confessions. The *Schlup* actual innocence gateway is reserved for "truly extraordinary" cases, 513 U.S. at 327, and the evidence that Petitioner presents does not meet that very high bar. Because Petitioner presents only journal articles as new evidence of

Petitioner's innocence, an evidentiary hearing on Petitioner's gateway showing of actual innocence is not warranted.

The Court ADOPTS Judge Beckerman's Findings and Recommendation (ECF 39), as supplemented herein. Petitioner's Amended Habeas Corpus Petition (ECF 34) is DENIED on the basis that it is untimely and Petitioner procedurally defaulted his available state remedies. The Court also declines to issue a Certificate of Appealability on the basis that Petitioner has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED.**

DATED this 20th day of June, 2018.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge